SAMUEL D. CASH,

*Plaintiff,*

v.

NORFOLK SOUTHERN
RAILWAY COMPANY,

*Defendant.*

CIVIL ACTION No. 6:13-cv-00056

**MEMORANDUM OPINION**

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

Samuel D. Cash ("Plaintiff," or "Cash") alleges that Norfolk Southern Railway Company ("Defendant," or "NSR"), violated the Federal Rail Safety Act, 49 U.S.C. § 20109 *et seq.* ("FRSA") and the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* ("FELA"). Plaintiff claims that Defendant violated the FRSA by retaliating against him for reporting a workplace injury,[1] and he alleges that it violated the FELA by negligently failing to provide a reasonably safe work environment.

The matter is before me now on consideration of the parties' cross-motions for summary judgment, which have been fully briefed, argued, and supplemented. Plaintiff seeks partial summary judgment regarding his FRSA claim, and Defendant seeks summary judgment regarding both of Plaintiff's claims.

---

[1] As discussed herein, NSR suspended Plaintiff on March 12, 2013, following a formal investigation hearing conducted under procedures established in the collective bargaining agreement ("CBA") between NSR and Plaintiff's labor union, the Brotherhood of Maintenance-of-Way Employees ("BMWE"). Evidence presented at the hearing showed that Plaintiff suffered an injury to his left shoulder in February 2010 and failed to report it until December 17, 2012. Following the injury in February 2010, Plaintiff continued to experience pain, eventually undergoing surgery in January 2013. Plaintiff sought medical attention for his injury between February 2010 and January 2013 without informing his NSR supervisor. Plaintiff's failures to report the injury and the medical treatment were determined to have violated NSR's Safety and General Conduct Rule N ("Rule N"); accordingly, Plaintiff was suspended for 30 days.

The record shows that Plaintiff knew, or should have known, that he suffered a workplace injury more than three years prior to filing suit, and thus his FELA claim is barred by the statute of limitations.[2] Regarding the FRSA claim, however, my review of the record discloses genuine issues of material fact that should be turned over to a jury. Accordingly, I will grant, in part, Defendant's motion to the extent that it seeks summary judgment regarding Plaintiff's FELA claim; otherwise, I will deny, in remaining part, Defendant's motion for summary judgment regarding Plaintiff's FRSA claim, and I will likewise deny Plaintiff's motion for partial summary judgment on the FRSA claim.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment (or partial summary judgment) "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*,

---

[2] Additionally, as discussed below, even were his FELA claim timely filed, Plaintiff cannot prove causation related to his FELA claim, given that he has failed to timely identify an expert witness. Nor can Plaintiff show that NSR had any notice that Plaintiff's thermite welding job posed an unreasonable risk of shoulder injury.

477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See*, *e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

When faced with cross-motions for summary judgment, the standard is the same. The court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quotations omitted). If the court finds that there is a genuine issue of material fact, both motions must be denied, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." *Trigo v. Travelers Commercial Ins. Co.*, 755 F. Supp. 2d 749, 752 (W.D. Va. 2010). The mere existence of "*some*" factual disputes will not defeat summary judgment; the dispute must be "genuine" and concern "material" facts. *Anderson*, 477 U.S. at 247–248; *see also Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Only legitimate disputes over facts that might affect the outcome of the suit under the governing law fall within that category. *Id*.; *see also Fields v. Verizon Servs. Corp.*, 493 Fed. App'x 371, 374 (4th Cir. 2012).

## II. Facts (and Factual Disputes)

My review of the record discloses the following.

NSR hired Plaintiff as a conductor in its Transportation Department on December 8, 1980. Plaintiff transferred to Maintenance of Way in January 1999, and eventually became a thermite welder.[3] Pursuant to NSR's Safety and General Conduct Rule N ("Rule N"), NSR requires its

---

[3] "Thermite is a pyrotechnic composition of metal powder fuel and metal oxide" that is "used for welding
(continued...)

employees to report all workplace injuries no later than the end of the day on which they suffer the injury. Rule N also requires NSR employees to notify their supervisors when they obtain medical attention off-duty and to report any injury they suffer off-duty that may adversely affect their ability to perform their work duties. *Id*. Plaintiff has suffered several on-the-job injuries at NSR. Aside from the injuries at issue in this case, Plaintiff immediately notified his supervisor, in accordance with Rule N, of every injury he previously suffered.

On February 22, 2010, Plaintiff was seen by Dr. Barnard, an orthopedist, regarding left shoulder pain. Dr. Barnard's office recorded that Mr. Cash is a "gentleman who does thermite welding for the railroad." Plaintiff did not notify NSR in February 2010 that he had suffered an injury at work, that he had suffered an off-duty injury that might have an adverse affect on his ability to perform his work duties, or that he had obtained medical attention off-duty for any injury.

In March 2010, Plaintiff again saw Dr. Barnard, who ordered magnetic resonance imaging ("MRI") of Plaintiff's left shoulder. The MRI showed a partial rotator cuff tear. After the March 2010 diagnosis, Plaintiff attended physical therapy sessions to rehabilitate and strengthen his shoulder.

NSR requires its employees to obtain periodic physical examinations. In connection with those examinations, an employee must complete a Medical Examination form and inform NSR whether the employee has suffered any injury or ailment that could affect work performance. In July 2011, Plaintiff stated that he had not suffered any injury and was not experiencing any pain. Plaintiff continued to work full-time at NSR and never reported any problems with his shoulder or

---

[3](...continued)
metal parts such as railway rails, in metal refining, demolition of munitions, and in incendiary weapons." *See* http://en.wikipedia.org/wiki/Thermite (accessed August 20, 2014).

that he had suffered an injury, work-related or otherwise.

From 2010 through 2013, Plaintiff also worked at his brother's roofing company, and experienced pain performing his roofing duties. Plaintiff experienced dull pain in his shoulder more than a year before December 17, 2012. The pain became progressively worse over time. Between November and December 2012, Plaintiff experienced sharp pain and weakness in his left shoulder. He felt sharp pain when lifting; otherwise he felt chronic dull pain in his left shoulder. He was unable to lift as much as he should have been able to lift; he could not "swing [his] arm around the way" he formerly could; he could not lift his elbow above his shoulders; and he had difficulty holding a hair dryer to dry his hair.

On November 15, 2012, Plaintiff again sought treatment from Dr. Barnard for his left shoulder. He presented with 3 months of increasing left shoulder pain and, on November 26, 2012, he underwent MRI, the results of which showed a fully torn left rotator cuff. On December 13, 2012, Dr. Barnard reviewed the MRI results with Plaintiff and prescribed surgery to repair the torn left rotator cuff.

On December 17, 2012, Plaintiff spoke with his supervisor, Joe Abbatello, and informed Abbatello of the need to have surgery on his left shoulder. Plaintiff had not previously notified his supervisor of the medical visits on November 15, 2012, November 26, 2012, or December 13, 2012, nor had he notified NSR of a workplace injury in February 2010. Abbatello discussed Plaintiff's injury with Abbatello's supervisor, Lucious Bobbitt, who directed Abbatello to notify NSR's Medical Department. The Medical Department placed Plaintiff on medical hold until it could review his medical records regarding the shoulder injury and determine his fitness-for-duty as a thermite welder.

Abbatello met with Plaintiff in Lynchburg on December 17, 2012, to advise Plaintiff that he

-5-

had been placed on medical hold. Plaintiff claims that, at the meeting in Lynchburg, he told Abbatello that the injury was work-related. However, Abbatello states that, when Plaintiff telephoned Abbatello on December 17, 2012, and first informed him of the injury, Abbatello inquired whether the injury was work-related. According to Abbatello, Plaintiff stated that it was a prior condition. Because Plaintiff allegedly stated that he had not suffered the injury on-the-job, Abbatello claims that he did not ask Plaintiff to file a "Form 22" injury report. Thereafter, on January 2, 2013, while Plaintiff was out on medical leave, Plaintiff spoke with Abbatello and, according to Abbatello, informed Abbatello for the first time that the injury had occurred at work. Upon learning of Plaintiff's claim that the injury occurred at work, Abbatello discussed Plaintiff's conflicting statements with Bobbitt.

Thus, Plaintiff and NSR dispute when he informed the railroad that his left shoulder condition was work-related. However, regardless of the specific date – December 17, 2012, or January 2, 2013 – Plaintiff first reported the injury nearly three years after he first suffered left shoulder problems. At the earliest, Plaintiff reported the February 2010 injury on December 17, 2012, after learning that his left rotator cuff was fully torn. In any event, it is undisputed that, on January 2, 2013, Abbatello and Bobbitt jointly called Plaintiff to discuss his injury and, during this conversation, Plaintiff told both of them that he had injured his shoulder on-the-job in February 2010. While Plaintiff could not specify where, when, or how his left shoulder injury occurred, he insisted that it happened in February 2010.

On January 14, 2013, pursuant to the collective bargaining agreement ("CBA") between NSR and Plaintiff's labor union, the Brotherhood of Maintenance-of-Way Employees ("BMWE"), NSR notified Plaintiff that he was to appear at a formal investigation hearing, scheduled for January 25, 2013, to establish whether Plaintiff had violated Rule N by (i) failing to timely report an injury; (ii)

-6-

failing to notify NSR that he had received medical treatment; and (iii) making false and/or conflicting statements. The parties agreed to reschedule the CBA-mandated formal investigation hearing for February 21, 2013, and Plaintiff underwent surgery on January 22, 2013, to repair his torn left rotator cuff.

After an investigatory hearing on February 21, 2013, in compliance with the BMWE CBA, NSR issued Plaintiff a 30-day suspension ending on February 13, 2013, for violating Rule N by failing to report a workplace injury in a timely manner and failing to notify his supervisor about seeking medical attention between February 2010 and January 2013. Plaintiff served his entire 30-day suspension while he was on medical leave, recovering from shoulder surgery.

Dr. Barnard did not clear Plaintiff to return to work until May 1, 2013; however, NSR did not learn that Plaintiff's physician had cleared him to return-to-work until May 9, 2013. To commence Plaintiff's return-to-work process, NSR faxed a Verified Job Task Listing for Thermite Welders to Dr. Barnard on Friday, May 10, 2013. Dr. Barnard returned the Verified Job Task Listing for Thermite Welders to NSR on Tuesday, May 14, 2013, indicating that Mr. Cash could return to thermite welding with no restrictions, specifying that there were no lifting restrictions.

NSR then required Plaintiff to complete a fitness-for-duty evaluation, including a Functional Capacity Evaluation ("FCE"). NSR scheduled the FCE with Lucas Therapies on Thursday, May 23, 2013. Lucas Therapies faxed NSR the results of Plaintiff's evaluation on Monday, June 10, 2013. Plaintiff stopped the waist-to-shoulder lift at 40 pounds, and therefore did not pass the FCE because he did not satisfy the job requirements. To be sure, Plaintiff claims that he stopped at 40 pounds only because the physical therapist, Mr. Gibson, instructed him to stop; however, Plaintiff does not dispute that he did not complete the required waist-to-shoulder lift of 50 pounds.

The NSR Medical Department reviewed the results of the FCE and, on Friday, June 13, 2014,

-7-

contacted Mr. Gibson, the physical therapist, on Friday, June 14, 2013, and explained that NSR needed Mr. Gibson to schedule another FCE for Plaintiff. Lucas Therapies telephoned Plaintiff on Monday, June 17, 2013, and scheduled him to undertake the waist-to-shoulder lift on Tuesday, June 18, 2013.

When Plaintiff completed the waist-to-shoulder 50 pound lift, NSR reinstated him for duty that very same day, Tuesday June 18, 2013, and he "marked up" for service and returned to work on Thursday, June 20, 2013.

Plaintiff admits that he has no basis or evidence, other than a "gut feeling," suggesting that NSR took any action or colluded with Lucas Therapies to delay his return to work; nonetheless, Plaintiff insists that NSR delayed his return to work.

On February 24, 2013, Plaintiff filed a complaint with the Department of Labor, claiming retaliation in violation of the FRSA. Plaintiff filed the instant action on November 13, 2013.

### III. FELA

#### A. Statute of Limitations

The FELA requires a railroad employee to bring suit against his employer for any injuries he suffers during the course of employment within three years of the date that he suffered the work-related injury. 45 U.S.C. § 56. A plaintiff must allege compliance with the statute of limitations as an element of his *prima facie* case. *See, e.g., Engel v. Davenport*, 271 U.S. 33, 39 (1926) ("The period of time within which an action may be commenced is a material element . . . ."); *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 266 n. 9 (5th Cir. 1991) ("FELA plaintiff has the burden to prove that her cause of action commenced within the three year limitations period."); *Emmons v. S. Pac. Transp. Co.*, 701 F.2d 1112, 1117 (5th Cir. 1983) ("The burden is . . . on the claimant to allege

-8-

and to prove that his cause of action was commenced within the three-year period." (citation omitted)).

Plaintiff filed suit on November 13, 2013. To comply with the statute of limitations, Plaintiff's injury, or his knowledge of sustaining the injury, may not be any earlier than November 13, 2010. 45 U.S.C. § 56. However, it is undisputed that Plaintiff's left shoulder injury manifested in February 2010. The "discovery rule" applies in FELA cases. *Urie v. Thompson*, 337 U.S. 163, 169-70 (1949) (under the FELA, a cause of action accrues once the effects of the injury manifest themselves); *United States v. Kubrick*, 444 U.S. 111, 123 (1979) (under the discovery rule, the statute of limitations begins to run once the plaintiff knows, or reasonably should know, that he suffered a work-related injury; no requirement exists that a doctor diagnose the injury); *Townley v. Norfolk & W. Ry. Co.*, 887 F.2d 498, 501 (4th Cir. 1989); *Watts v. Norfolk & W. Ry. Co.*, 1988 WL 102053, at *1 (W.D. Va. Jan. 6, 1988). The discovery rule places the burden on employees to exercise reasonable diligence in discovering whether they have suffered an injury, or whether an injury occurred on-the-job. *Townley*, 887 F.2d at 501 ("The FELA statute is a notice statute. Once a plaintiff knows he has been hurt and who has inflicted the injury, he is under a duty to investigate."). A plaintiff knows or reasonably should know he suffered a work-related injury when he first experiences some of the symptoms of that injury. *Fries v. Chicago & Nw. Transp. Co.*, 909 F.2d 1092, 1095 (7th Cir. 1990).

The discovery rule protects plaintiffs who suffer latent injuries incapable of detection, but it does not protect employees who fail to file suit within the prescribed limitations period. *Urie*, 337 U.S. at 169. Here, Plaintiff did not suffer a latent injury; he admits that his left shoulder problem manifested in February 2010. Plaintiff saw a Lynchburg orthopedist, Dr. John Barnard, on February 22, 2010, complaining about left shoulder pain. Dr. Barnard's office notes quote Mr. Cash's

-9-

explanation of the injury: "I tripped over a hose and hit the left door jam [*sic*] with my left shoulder." Plaintiff denies saying this to Dr. Barnard and denies any such occurrence. Nevertheless, Dr. Barnard ordered an MRI and eventually diagnosed a partially torn left rotator cuff. All the while, with Dr. Barnard's approval, Plaintiff continued working as a thermite welder. Plaintiff states that, in February 2010, he informed his Welding Supervisor that he was having his shoulder checked out because it was bothering him. Additionally, Plaintiff gave deposition testimony confirming that, when he reported the injury to Abbatello in December 2012, he did not "attribute [the injury] to any specific incident at any time," but that he "first noticed it in February of 2010."

Therefore, in February 2010, Plaintiff possessed sufficient facts to know, or he reasonably should have known, that he had suffered a work-related injury, and the statute of limitations commenced to run on his claim. *See, e.g.*, *Bealer v. Mo. Pac. R.R. Co.*, 951 F.2d 38, 40 (5th Cir. 1991) (granting the railroad summary judgment on statute of limitations grounds because the employee "was aware of critical facts concerning his injury and its causation . . . and that he associated his ear and hearing problems with noise at work"; therefore, he "knew or reasonably should have known . . . that his hearing condition arose from employment"). Accordingly, Plaintiff's FELA claim is barred by the statute of limitations.

### B. Negligence

### 1.

At its heart, the FELA is a negligence statute and, assuming for the sake of argument that Plaintiff's FELA claims were timely filed, he must prove Defendant's negligence. *See Jordan v. S. Ry. Co.*, 970 F.2d 1350, 1352 (4th Cir. 1992) ("FELA is not a no-fault worker's compensation statute; the injured worker must prove some act of negligence on the part of the employer.").

Additionally, under the FELA, a railroad is liable only for "injuries sustained in the course

-10-

of employment," *CSX Transp., Inc. v. McBride*, 564 U.S. ___, ___, 131 S. Ct. 2630, 2636 (2011); *see also Williams v. Norfolk S. Ry. Co.*, 767 F. Supp. 756, 757 (E.D. Va. 1991), and a plaintiff must come forth with some evidence of negligence before a case is left to the trier of fact, *see, e.g.*, *Brady v. S. Ry. Co.*, 320 U.S. 476, 479-80 (1943) ("The weight of the evidence under the [FELA] must be more than a scintilla before the case may be properly left to the discretion of the trier of fact."); *Brown v. CSX Transp., Inc.*, 18 F.3d 245, 248 (4th Cir. 1994) (citing *Atl. Coast Line R.R. v. Craven*, 185 F.2d 176, 178 (4th Cir. 1950)) (reversing denial of summary judgment due to lack of substantial evidence and stating that "[a]n employer has a duty to provide his employees a safe place to work, but this duty cannot be absolute. Dangers are implicit in such occupations as railroading, and railroads are not insurers of their employees."). The FELA requires railroads to take reasonable precautions to protect its employees, but Plaintiff carries the burden of proving some negligent act or omission by NSR. *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330 (4th Cir. 1998) (affirming summary judgment when defendant had no notice of a defect that injured plaintiff).

Here, Plaintiff does not point to any negligent act or omission of NSR to support a FELA claim, and the record discloses no such act or omission. *See, e.g.*, *Harrison v. Mo. Pac. R.R. Co.*, 372 U.S. 248, 249 (1963); *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 269 (6th Cir. 2007) (granting summary judgment for railroad because of lack of evidence of negligence and stating that the relaxed causation standard in FELA cases has no effect on a plaintiff's initial burden to show that the railroad was negligent). Thus, as a matter of law, NSR cannot be found liable because either (a) NSR had no notice that Plaintiff's thermite welding job posed an unreasonable risk of shoulder injury, and thus engaged in no negligent act, or (b) Plaintiff did not sustain a work-related injury, given his physician's records (and notwithstanding Plaintiff's denials of accuracy of the physician's

-11-

notes).[4]

**2.**

Significantly, Plaintiff has not identified any expert witnesses in accordance with the court's pretrial scheduling order and Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. Absent expert evidence on causation, Plaintiff's claim that his injury was caused by the performance of similar tasks over a period of time is insufficient, as a matter of law, to establish negligence. *See, e.g.*, *Huffman v. Union Pac. R.R.*, 675 F.3d 412, 433 (5th Cir. 2012) (granting defendant a directed verdict when there was no evidence of a causal link between the alleged negligence and the injury).

Plaintiff asserts (with no citation to legal authority or precedent) that he can establish FELA negligence without expert testimony. He further states that his "medical records as well as his own testimony and that of other witnesses" prove FELA negligence (although he does not point to any specific fact disclosed in his medical record to support this claim).

However, in a FELA case lodging an occupational repetitive strain injury claim, such as Plaintiff alleges, expert testimony is indispensable to any negligence finding. *See, e.g., Myers v. Illinois Central Ry. Co.*, 629 F.3d 639, 643 (7th Cir. 2010) (regarding repetitive stress injury, "determining what caused it is not usually obvious to a layman and thus requires expert testimony"); *Brooks v. Union Pac. R.R. Co.*, 620 F.3d 896, 899 (8th Cir. 2010) (granting summary judgment to defendant because the plaintiff failed to designated an expert in accordance with Rule 26(a)(2) and "[b]ecause the type of injury [plaintiff] suffered had no obvious origin, 'expert testimony is

---

[4] Moreover, Plaintiff's deposition testimony admitted to working with his brother's roofing company throughout the relevant time period of February 2010 to December 2012. The roofing work required him to engage in heavy lifting, and he admitted to feeling pain while doing roofing work. Plaintiff cannot show whether his injury resulted from his roofing work, or his work as a thermite welder, or from another cause, such as a fall into a doorjamb.

-12-

necessary to establish even that small quantum of causation required by FELA.'") (quoting *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 504 (9th Cir. 1994)); *Norfolk and Western Railway Co. v. Johnson*, 251 Va. 37, 42 (1996) (considering railroad's appeal in a FELA case, Supreme Court of Virginia found that the evidence was sufficient to create jury questions on the issues of negligence, causation, and foreseeability, specifically pointing to the trial testimony of Dr. Michael Shinnick, "an expert in industrial engineering and ergonomics," who testified at length about industry knowledge of risk factors for development of occupational carpal tunnel syndrome, including repetition, vibration, force, and static position; Dr. Shinnick also testified that the "industry had established methods to prevent occupational carpal tunnel syndrome").

Moreover, Plaintiff's bare assertions find no factual support in the record. He alleges an occupational repetitive strain injury to his left shoulder, which he claims was caused by his work as a thermite welder, but he has no expert witness to provide an opinion that the work of a thermite welder involves risk factors that would cause or contribute to a torn rotator cuff. Significantly, he has no medical witness that his thermite welding work, with a reasonable degree of medical certainty, caused or contributed to the torn left rotator cuff. Even under the expansive causation standard for FELA claims described in *CSX Transp., Inc. v. McBride*, *supra*, 564 U.S. at ___, 131 S. Ct. at 2644 ("that a defendant railroad 'caused or contributed to' a railroad worker's injury 'if [the railroad's] negligence played a part—no matter how small—in bringing about the injury'"), Plaintiff has failed to show that NSR's negligence played any part in his injury.

Indeed, Plaintiff's treatment by his own orthopedic surgeon supports a conclusion to the contrary. In February 2010, when Plaintiff alleges that his left shoulder injury first manifested, Dr. Barnard permitted Plaintiff to continue working as a thermite welder while he underwent physical therapy. In November and December 2012, when NSR removed Plaintiff from service pending a

-13-

review of his medical records by NSR's Medical Department, Dr. Barnard recorded his opinion that there were no restrictions on Plaintiff's ability to work as a thermite welder. In sum, none of Dr. Barnard's medical records describe any suggestion of a causal relationship between thermite welding and the torn left rotator cuff.

Thus, assuming *arguendo* that Plaintiff's FELA claims were timely filed, the record fails to disclose that thermite welding caused Plaintiff's left shoulder problems.

### *3.*

Assuming even further that Plaintiff's injuries were caused by his work as a thermite welder, an employer is not negligent under the FELA unless the employer knows, or reasonably should know, that a hazardous condition exists and it fails to correct it. *Brown v. CSX Transp., Inc.*, 18 F.3d at 250-51. Plaintiff admitted in deposition testimony that he never informed NSR that he was experiencing left should rotator cuff problems until December 2012, after his treating orthopedist prescribed surgery.

As part of its efforts to maintain a reasonably safe work environment, NSR requires its employees to inform it of any injury that may affect an employee's ability to work. During the relevant time, *i.e.*, between the time when Plaintiff claims his injury manifested (from February to March 2010) and his first report of the injury (in December 2012), NSR required Plaintiff to complete a periodic Medical Examination Form. On this form, signed and acknowledged by Plaintiff, he asserted that he did not have any injury to report that might affect his job performance, notwithstanding that he had received a medical diagnosis and treatment regarding his left shoulder in February and March 2010. Had Plaintiff reported his injury and treatment on this form, NSR arguably could have taken steps to prevent Plaintiff's alleged injury.

But on this record, no evidence exists of NSR's negligence. In 2010 and 2011, Plaintiff did

-14-

not inform NSR of having suffered a workplace injury in February 2010. Even under the most favorable construction of the record and Plaintiff's allegations, NSR could not have been negligent, because NSR had no notice that thermite welding posed an allegedly unreasonable safety risk to Plaintiff. Accordingly, NSR is entitled to summary judgment. *See*, *e.g.*, *Robert v. Consol. Rail Corp.*, 832 F.2d 3, 6 (1st Cir. 1987) (affirming summary judgment because the record failed to show that defendant knew or should have known of the possibility that its conduct towards plaintiff would cause harm).

### C. Plaintiff's FELA Claim, in Summary

Plaintiff argues that his claim is not barred by FELA's statute of limitations because he "took reasonable steps to inquire as to the cause of his shoulder pain and a trained medical doctor did not indicate that it could be work-related." Thus, he argues on one hand that his medical record can be interpreted to establish that he suffered a repetitive strain injury at work, while he claims on the other hand that he did not know, or he reasonably should not have known, that he had suffered the injury at work.

This case presents facts similar to those in *Myers v. Illinois Central Ry. Co.*, *supra*, 629 F.3d 639. In *Myers*, the plaintiff suffered from an alleged repetitive strain injury after working for the defendant railroad for a number of years. *Id*. at 640-41. Although the parties agreed that plaintiff performed physically demanding work, the railroad moved for summary judgment on plaintiff's FELA claim because plaintiff could not offer any admissible expert testimony proving causation. *Id*. The court distinguished those cases where expert testimony is not needed – such as when an employee suffers from a broken leg or is involved in an accident – from those where a layperson may not understand the cause of injury – such as a repetitive stress injury. *Id*. at 643. The court observed, *id*., that

-15-

neither [plaintiff] nor his physicians could point to a specific injury or moment that brought on the problems with his knee, elbow, and back and neck. Instead, [plaintiff] claims that they are the product of years of working for the Railroad. […] When an injury is of this nature, determining what caused it is not usually obvious to a layman and thus requires expert testimony.

Here, as in *Myers*, Plaintiff maintains that he does not know when, how, or where he suffered from the injury. Indeed, as Plaintiff has acknowledged, his own physician could not specify whether Plaintiff suffered the injury at work. Although Plaintiff believes that somehow a layperson could naturally conclude that the injury was work-related, even though his own physician could not, courts have held that this is exactly the kind of injury that requires expert testimony to establish causation. *See, e.g., Brooks v. Union Pac. R.R. Co.*, *supra*, 620 F.3d at 899 (granting summary judgment to defendant because the plaintiff failed to designated an expert in accordance with Rule 26(a)(2) and "[b]ecause the type of injury [plaintiff] suffered had no obvious origin, 'expert testimony is necessary to establish even that small quantum of causation required by FELA.'") (quoting *Claar v. Burlington N. R.R. Co.*, *supra*, 29 F.3d at 504).

For these reasons, I will grant Defendant's motion for summary judgment regarding Plaintiff's FELA claim.


## IV.  FRSA

Plaintiff seeks relief under the FRSA, which makes it a violation to discipline an employee if he reports, or attempts to report, a work-related injury or safety hazard. 49 U.S.C. § 20109(a)(4), (b)(1)(A). The FRSA further provides that the relevant legal burdens of proof are established in the whistleblower protection program of the Wendell H. Ford Investment and Reform Act for the 21st Century, U.S.C. § 42121(b) ("AIR21"). 49 U.S.C. § 20109(d)(2). Accordingly, Plaintiff must make a *prima facie* showing that FRSA-protected activity constituted a "contributing factor" to his

suspension. 49 U.S.C. § 42121(b)(2)(B); *Araujo v. N. J. Transit. Rail Operations., Inc.*, 708 F.3d 152, 157 (3d Cir. 2013).

Both parties move for summary judgment regarding Plaintiff's FRSA claim. Both motions fail. In order for me to grant Plaintiff's motion, I would have to accept his version of the facts, which would be improper as he is the movant for summary judgment; moreover, Plaintiff's rendition of the facts is contradicted by sworn testimony and documents in the record, thus creating, not resolving, genuine issues of material fact. In order to grant Defendant's motion for summary judgment, I would have to improperly weigh Defendant's version of the facts over Plaintiff's and, more significantly, I would have to resolve several questions in Defendant's favor, notwithstanding a heavy burden that Defendant has not carried.

The FRSA was enacted, in significant part, to counter a history of retaliation against injured railway employees and the under-reporting of injuries by the nation's railroad companies. *Araujo*, 708 F.3d at 159. Under the AIR21 standard, a FRSA plaintiff makes out a *prima facie* case by establishing, by a preponderance of the evidence, that

- the employee engaged in protected activity (or, in circumstances covered by the statute, was perceived to have engaged or to be about to engage in protected activity);

- that the railroad employer knew or suspected, actually or constructively, that the employee engaged in protected activity (or, in circumstances covered by the statute, perceived the employee to have engaged or to be about to engage in protected activity);

- the employee suffered an adverse action; and

- the protected activity was a contributing factor in the adverse action.

49 U.S.C. § 20109(d)(2)(A)(i); 49 U.S.C. § 42121(b); 29 C.F.R. § 1982.104(e); *Almendarez v. BNSF Ry. Co.*, 2014 WL 931530 at *4 (W.D. Wash. Mar. 10, 2014); *Araujo* at 157.

-17-

Once a *prima facie* case is established, a defendant railroad is liable unless it can prove by clear and convincing evidence that it would have taken the same adverse action in the complete absence of the protected action. 49 U.S.C. § 42121(b)(2)(B)(ii). This standard is markedly distinct from (and far easier for a plaintiff to satisfy than) the burden-shifting framework for Title VII cases set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Araujo* at 157, 159 (discussing *McDonnell Douglas* burden-shifting). For railroad employers, "'this is a tough standard, and not by accident.'" *Araujo* at 159 (quoting *Stone & Webster Eng'g Corp. v. Herman*, 115 F.3d 1568, 1572 (11th Cir. 1997)); *Almendarez* at *4 ("[t]he adoption of this framework reflects a purposeful intent to be protective of plaintiff-employees in retaliation cases relating to injury reporting."). Indeed, "Congress re-emphasized the broad reach of FRSA when it expressly added 'threatening discipline' as prohibited discrimination in section 20109(c) of the FRSA whistleblower statute." *Vernace v. Port Authority Trans-Hudson Corporation*, 2012 WL 6849446 at *2 (DOL Adm. Rev. Bd. Dec. 21, 2012); *see also id.* at n. 5 (noting "that FRSA's legislative history demonstrates a broad Congressional intent" (citation omitted)).

Again, to establish a *prima facie* case, a plaintiff needs only to show that the protected activity was a "contributing factor" in the retaliatory discharge or discrimination, not the sole or even predominant cause. *See* 49 U.S.C. § 42121(b)(2)(B)(ii). In other words, "[a] contributing factor is 'any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision.'" *Allen v. Administrative Review Bd.*, 514 F.3d 468, 476 n. 3 (5th Cir. 2008) (citations omitted)) *see also Ameristar Airways, Inc. v. Admin. Rev. Bd.*, 650 F.3d 562, 567 (5th Cir. 2011) (quoting *Allen*, 514 F.3d at 476 n. 3). "Furthermore, an employee '*need not* demonstrate the existence of a retaliatory motive on the part of the employee taking the alleged prohibited personnel action in order to establish that his disclosure was a contributing factor to the personnel action.'"

-18-

*Araujo*, 708 F.3d at 158 (quoting *Marano v. Dep't of Justice*, 2 F.3d 1137, 1141 (Fed. Cir. 1993) (discussing Whistleblower Protection Act, which was "intended to overrule existing case law, which requires a whistleblower to prove that his protected conduct was a 'significant', 'motivating', 'substantial', or 'predominant' factor in a personnel action in order to overturn that action")); *see also Coppinger–Martin v. Solis*, 627 F.3d 745, 750 (9th Cir. 2010) ("A prima facie case does not require that the employee conclusively demonstrate the employer's retaliatory motive.").

Of particular significance in the instant case, 49 U.S.C. § 20109(a)(4) protects a railroad employee's "good faith act done . . . to notify, or attempt to notify, the railroad carrier . . . of a work-related personal injury or work-related illness of an employee." The relevant inquiry, then, which neither Plaintiff nor Defendant have answered sufficiently to leave no genuine issue of material fact, is "whether, *at the time he reported his injury* to Defendant, Plaintiff genuinely believed the injury he was reporting was work-related." *Ray v. Union Pac. RR. Co.*, 971 F. Supp. 2d 869, 884 (S.D. Iowa Sept. 13, 2013). If Plaintiff believed that his injury was work-related, "then his activities were in good faith and were protected under the FRSA." *Davis v. Union Pac. RR Co.*, 2014 WL 3499228 at *7 (W.D. La. July 14, 2014).

The following genuine disputes of material fact prevent me from resolving whether, under 49 U.S.C. § 20109(a)(4), Plaintiff in "good faith" reported "a work-related personal injury or work-related illness":

- The parties dispute whether Plaintiff ever suffered a work-related repetitive strain injury. Plaintiff's medical records indicate that he suffered a traumatic injury, which he denies. Defendant asserts that Plaintiff told Abbatello and Bobbitt on December 17, 2012, that the injury did not occur at work , and that Plaintiff never told his former supervisor in February 2010 that an injury had occurred at work.

- The parties dispute whether Plaintiff notified NSR before January 2, 2013 that he had suffered a work-related left shoulder injury.

-19-

- The parties dispute whether, on December 17, 2012, when he was specifically asked by Abbatello and Bobbitt if he had suffered the injury at work, he denied having been injured on the job.

- Plaintiff disputes that he told his orthopedic physician, Dr. Barnard, in February 2010 that he injured his shoulder when he tripped over a hose and hit his left shoulder on a door jamb.

- The parties dispute that NSR's requirement that Plaintiff complete a FCE had no improper purpose and was both logically necessary as well as legally proper.

- Plaintiff alleges that NSR delayed his return-to-work. Defendant denies this allegation.

- The parties dispute whether NSR would have taken the same adverse action against Plaintiff if it learned by some means that he suffered an injury at work other than by Plaintiff reporting or attempting to report the injury.

- The parties dispute that Plaintiff believed, in good faith, that he suffered a work-related injury, which first manifested in February 2010; whether he reported to Abbatello and Bobbitt on December 17, 20112, that is was not work-related; and whether he first reported the injury as work-related on January 2, 2013.

- The parties dispute whether NSR knew or reasonably should have known that Plaintiff engaged in protected activity.

Assuming that Plaintiff had stated a *prima facie* case, Defendant's argument that Plaintiff's alleged violation of Rule N justified the discipline does not resolve the question whether the "decision to enforce these rules . . . was retaliatory." *Araujo*, 708 F.3d at 160; *see also Henderson v. Wheeling & Lake Erie Railway*, 2012 WL 5391422 at *10 (DOL Admin. Rev. Bd. Oct. 26, 2012) (explaining that the "legitimate business reason" analysis is not applicable in FRSA cases); *Ray*, *supra*, 971 F. Supp. 2d at 886, n. 19 ("Defendant's arguments that it had 'ample basis to discipline' Plaintiff and 'acted reasonably in finding Plaintiff guilty of late reporting and dishonesty' misses the mark. The present action is not an appeal of the PLB's determination. It is an action under the FRSA, which evaluates *only* whether Plaintiff's filing of a work-related injury report was a

-20-

contributing factor in Defendant's adverse disciplinary decision. Indeed, even if dishonesty and late reporting comprised 99.9% of the reason Defendant discharged Plaintiff, Plaintiff's FRSA actions would still be viable because his injury report could still have been 'a contributing factor' in the disciplinary action."); *DeFrancesco v. Union R.R. Co.*, 2012 WL 694502 (DOL Adm. Rev. Bd. Feb. 29, 2012) (reversing and remanding ALJ determination that DeFrancesco failed to prove that his protected activity of reporting a slip-and-fall accident was a contributing factor in his suspension); *Hutton v. Union Pac. R.R. Co.*, 2013 WL 2450037 (DOL Adm. Rev. Bd. May 31, 2013) (concluding that Hutton's report of an injury was a contributing factor to his termination).

Here, there is sufficient evidence in the record that Plaintiff's act of reporting his shoulder injury as work-related could have been a "contributing factor" that led to Defendant's investigation and subsequent suspension of Plaintiff. On January 2, 2014, the date Defendant claims it became aware that Plaintiff reported his shoulder injury as work-related, Defendant made its decision to open a formal investigation. That Defendant began disciplinary proceedings on the very same day it claims to have learned that Plaintiff's injury had been reported as work-related demonstrates "a genuine issue of material fact as to whether his protected activity was a contributing factor in his termination, both because of the temporal proximity between the report and the subsequent investigation, and because Plaintiff's report is inextricably intertwined with the adverse employment action." *Ray*, *supra*, 971 F. Supp. 2d at 887 (citations omitted). Defendant has failed to provide clear and convincing evidence that it would have taken the same action in the absence of the alleged protected activity.[5]

---

[5] I note that Defendant asserts that the temporal proximity between Plaintiff's report and Defendant's imposition of discipline is insufficient to establish that the protected activity was a contributing factor to the adverse employment action. However, it has been held that "[t]emporal proximity between the employee's
(continued...)

## V. Conclusion

For the stated reasons, I will grant, in part, Defendant's motion for summary judgment regarding Plaintiff's FELA claim; I will deny, in remaining part, Defendant's motion for summary judgment regarding Plaintiff's FRSA claim; and I will likewise deny Plaintiff's motion for partial summary judgment on the FRSA claim.

An appropriate order accompanies this memorandum opinion.

Entered this ____14th____ day of January, 2015.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[5](...continued)
engagement in a protected activity and the unfavorable personnel action can be circumstantial evidence that the protected activity was a contributing factor to the adverse employment action." *Araujo*, 708 F.3d at 160 (citing *Kewley v. Dep't of Health and Human Servs.*, 153 F.3d 1357, 1362 (Fed. Cir. 1998) (observing that, under the Whistleblower Protection Act, "'the circumstantial evidence of knowledge of the protected disclosure and a reasonable relationship between the time of the protected disclosure and the time of the personnel action will establish, *prima facie*, that the disclosure was a contributing factor to the personnel action'" (quoting *Horton v. Department of the Navy*, 66 F.3d 279, 284 (Fed. Cir. 1995))).

Case 6:13-cv-00056-NKM-JCH   Document 40   Filed 01/14/15   Page 22 of 22   Pageid#: 1007